# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, DONALD PETERSON, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been employed with the FBI since 2004. I am presently assigned to the Denver Division of the FBI. My responsibilities include the investigation of federal crimes to include violations of Title 18, United States Code (U.S.C.), § 242 (Deprivation of Rights Under Color of Law). I am currently assigned to investigate allegations of sexual misconduct under color of law. I received 17 weeks of specialized law enforcement training at the FBI Academy in Quantico, Virginia. My experience as a Special Agent of the FBI has included investigations of multiple violations of federal criminal civil rights laws. I also spent 18 months as a supervisory special agents with the Civil Rights Unit at FBI headquarters, where I was responsible for reviewing cases involving allegations related to civil rights violations. While there I also provided advice to special agents in the field conducting civil rights investigations.

2. The facts provided in this Affidavit related to an ongoing investigation involving allegations that former Westminster Senior Police Officer CURTIS LEE ARGANBRIGHT sexually assaulted a VICTIM, whose identity is known to me, in his custody under color of law. Such conduct implicates the federal civil rights statute, 18 U.S.C. § 242, which makes it a crime for an officer acting under color of law to willfully deprive a person of her Fourteenth Amendment due process right to bodily integrity.

## PURPOSE OF THIS AFFIDAVIT

3. This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the evidence locker at the Federal Bureau of Investigation, 8000 East 36th Avenue, Denver, CO 80238, identified in ATTACHMENT A (hereinafter the "SUBJECT PREMISES"), there being probable cause to believe that the items described below, and in ATTACHMENT B (hereinafter the "SUBJECT ITEMS"), are evidence, fruits, and instrumentalities of violations of federal civil rights law, including 18 U.S.C. § 242 (the "SUBJECT OFFENSE."):

   a. Black handcuffs from duty bag of CURTIS LEE ARGANBRIGHT, located in ARGANBRIGHT's personal vehicle and tagged as item number 71 by BPD;

   b. Work boots, found in ARGANBRIGHT's work locker and tagged as item 68 by BPD;

   c. 5 long-sleeve and 5 short-sleeve uniform shirts from ARGANBRIGHT's work locker and tagged as item 65 by BPD;

   d. Police vest and carrier vest from ARGANBRIGHT's work locker and tagged as item 64 by BPD;

6

e. 5 uniform pants and one raid jacket from ARGANBRIGHT's work locker and tagged as item 62 by BPD;

f. Police vest, found on floor of ARGANBRIGHT's work locker and tagged as item 60 by BPD;

g. One 2mg alprazolam tablet (a/k/a Xanax), found in front passenger seat of ARGANBRIGHT's patrol vehicle and tagged as item 58;

h. Uniform shirt with badge found in ARGANBRIGHT's work locker and tagged as item 57 by BPD;

i. Silver handcuffs found on ARGANBRIGHT's duty belt, found in ARGANBRIGHT's work locker and tagged as item 56 by BPD;

j. Black handcuffs found on ARGANBRIGHT's duty belt, found in ARGANBRIGHT's work locker and tagged as item 55 by BPD;

k. Black Glock 17 with a black streamlight, found in ARGANBRIGHT's personal vehicle and tagged as item 54 by BPD;

l. Glock 9mm magazine with 21 live rounds of Speer 9mm rp Luger ammunition, found in ARGANBRIGHT's personal vehicle and tagged as item 53 by BPD;

m. Duty belt, found in ARGANBRIGHT's work locker and tagged as item 53 by BPD;

n. 3 uniform pants, found in ARGANBRIGHT's work locker and tagged as item 51 by BPD;

o. Short-sleeve shirt, found in ARGANBRIGHT's work locker and tagged as item 49 by BPD;

p. Underwear, found in back of ARGANBRIGHT's work locker and tagged as item 48 by BPD;

q. Underwear, found on top shelf of ARGANBRIGHT's work locker and tagged as item 47 by BPD;

r. Part of duty belt, found in ARGANBRIGHT's work locker and tagged as item 46 by BPD;

s. Long-sleeve shirt, found in ARGANBRIGHT's work locker and tagged as item 45 by BPD;

t. Socks, found in ARGANBRIGHT's work locker and tagged as item 44 by BPD;

u. Underwear, found in front of ARGANBRIGHT's work locker and tagged as item 43 by BPD;

    v. Undershirt, found on top shelf of ARGANBRIGHT's work locker and tagged as item 42 by BPD;

    w. Short-sleeve shirt left of pinned uniform shirt, found in ARGANBRIGHT's work locker and tagged as item 40 by BPD;

    x. Undershirt, found in front seat passenger area of ARGANBRIGHT's personal vehicle and tagged as item 34 by BPD;

    y. Underwear found on back passenger side of ARGANBRIGHT's personal vehicle and tagged as item 33 by BPD;

    z. Shirt, found in back end of ARGANBRIGHT's personal vehicle and tagged as item 32 by BPD;

    aa. Shirt, found in backend of ARGANBRIGHT's personal vehicle and tagged as item 31 by BPD;

    bb. Black duty bag containing brass knuckles, ink pad, large black knife, Nikon Coolpix camera, notebooks, code books, citation paperwork, blank WPD forms, yellow reflective police vest, and black handcuffs, found in ARGANBRIGHT's personal vehicle and marked as item 30 by BPD;

    cc. Uniform shirt, found on back passenger side of ARGANBRIGHT's personal vehicle and tagged as item 29 by BPD;

    dd. Pant and underwear, found on front passenger side of ARGANBRIGHT's personal vehicle and tagged as item 28 by BPD;

    ee. Uniform pants, found in back of ARGANBRIGHT's personal vehicle and tagged as item 26 by BPD;

    ff. Underwear, recovered from ARGANBRIGHT's personal residence and tagged as item 25 by BPD;

    gg. Undershirt, recovered from ARGANBRIGHT's personal residence and tagged as item 24 by BPD;

4.     The SUBJECT ITEMS were lawfully obtained by the Federal Bureau of Investigation. They originally came into the custody of the Broomfield Police Department ("BPD") when, on August 24, 2017, CURTIS LEE ARGANBRIGHT gave oral and written consent to officers of that department to search his locker, car, and home and to seize any items those officers desired. However, ARGANBRIGHT, through his lawyers, revoked consent for the searches at a hearing in Colorado District Court for the 17th Judicial District on June 27, 2019. Thus, while the government may already have all necessary authority to retain these items pursuant to the consent and plain view exceptions to the warrant requirement, I nevertheless seek this additional warrant out of an abundance of caution to be certain that their continued seizure complies with the Fourth Amendment and other applicable laws.

8

5. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that the SUBJECT ITEMS described in ATTACHMENT B constituting evidence, fruits, and instrumentalities related to the SUBJECT OFFENSE are located in the place described in ATTACHMENT A. The information set forth herein is based upon my participation in the investigation, encompassing my personal knowledge, observations and experience, as well as information obtained from my review of investigative reports, intelligence reports, interviews and debriefings with the participating officers and agents, and VICTIM, who have participated in this investigation. For the reasons set forth below, I respectfully submit that there is probable cause to believe that CURTIS LEE ARGANBRIGHT committed the SUBJECT OFFENSE and that the SUBJECT ITEMS constitute evidence and instrumentalities of the SUBJECT OFFENSE.

### THERE IS PROBABLE CAUSE TO BELIEVE THAT CURTISE LEE ARGANBRIGHT WILLFULLY DEPRIVED VICTIM OF HER CONSTITUTIONAL RIGHT TO BODILY INTEGRITY

6. The investigation has revealed that on August 24, 2017, CURTIS LEE ARGANBRIGHT was on duty as a Westminster Police Department ("WPD") Officer. He was working alone in a marked WPD squad car and in full WPD uniform, including his assigned duty belt, a silver set of handcuffs, a side arm, and a Taser, each of which are among the SUBJECT ITEMS to be seized by this warrant.

7. As part of this investigation, I have personally interviewed VICTIM. Before I interviewed VICTIM, VICTIM was interviewed several times by other investigators. During those interviews VICTIM stated the following, in sum and substance and in pertinent part:

   a. On August 23, 2017 VICTIM voluntarily checked in to St. Anthony North Health Campus to receive treatment for her severe alcohol intoxication and chronic alcohol abuse. While receiving treatment, VICTIM stole medical supplies and put them in her purse. Hospital staff saw the theft and reported it to the Westminster Police Department.

   b. CURTIS LEE ARGANBRIGHT responded to the hospital's report of the theft early in the morning hours of August 24, 2017. When he arrived, he told VICTIM that VICTIM would not be charged with a crime. ARGANBRIGHT also agreed to give VICTIM a ride home.

   c. ARGANBRIGHT escorted VICTIM to his patrol vehicle, which was parked at the front entrance to the hospital. When they reached the vehicle, ARGANBRIGHT told VICTIM to put VICTIM's hands on the vehicle so that he could conduct a "pat down." ARGANBRIGHT also told VICTIM to spread VICTIM's legs. ARGANBRIGHT then began moving his hands over VICTIM's body. When ARGANBRIGHT touched the area around VICTIM's groin he stated something to the effect of "you are liking this," and moved his hand in that area, touching her groin over her clothes.

      d.    ARGANBRIGHT opened the front passenger side of his patrol vehicle and put VICTIM into the seat without handcuffing her.  ARGANBRIGHT then entered the vehicle and drove away from the hospital, with VICTIM giving him directions to her home.

      e.    A short time later, ARGANBRIGHT pulled off the main road connecting the hospital to VICTIM's home and parked the vehicle.  He ordered VICTIM out of the vehicle and handcuffed her. He then ordered the removal of the VICTIM's pants. ARGANBRIGHT then penetrated the VICTIM'S vagina with his erect penis without her consent for approximately two to three minutes. The VICTIM explained that she felt significant pain when he did this because she was physically unprepared for what was happening. Additionally, ARGAN BRIGHT did not remove his duty belt, and the VICTIM described feeling the belt painfully push into her lower back and buttocks as he was penetrating her vagina.  ARGANBRIGHT had trouble staying erect, and after a few minutes moved VICTIM toward the front of the car and ordered her to get on her knees. Unable to maintain an erection, ARGANBRIGHT then moved VICTIM, still handcuffed, to the front of the vehicle, where VICTIM knelt on loose gravel.  There, ARGANBRIGHT forced his penis into VICTIM's mouth, placed his hand on the back of VICTIM's head, and forced VICTIM's head back and forth.  ARGANBRIGHT ejaculated into VICTIM's mouth and onto her face.

      f.    ARGANBRIGHT helped VICTIM to her feet and removed the handcuffs.  He then placed VICTIM back into the front passenger seat of the vehicle and drove VICTIM home.  During the drive he told VICTIM that she had better not tell anyone about the assault.  At the VICTIM's home, he gave her his business card and told her to call him later.

      g.    VICTIM expressed being afraid for her safety from the moment ARGANBRIGHT turned the patrol car off the road.  Specifically, VICTIM reported that she did not resist or run away because, among other things, ARGANBRIGHT was physically imposing, carried a gun, and had the power and opportunity to inflict even greater harm.

    8.    CURTIS LEE ARGANBRIGHT was charged by the District Attorney of the 17th Judicial District with felony counts of sexual assault by force and sexual assault through a position of authority.  However, VICTIM ultimately refused to testify in state court and, on October 2, 2018 ARGANBRIGHT pleaded guilty to misdemeanor charges of unlawful sexual conduct and official misconduct.  On November 29, 2018 he was sentenced to 90 days in jail and 4 years of probation.

    9.    VICTIM is an admitted alcoholic with a history of chronic alcohol abuse.  VICTIM has also admitted to using methamphetamine and cocaine.  VICTIM has a criminal history that includes possession of drugs and driving under the influence.  Other witnesses, such as VICTIM's ex-husband, have described instances in which VICTIM was untruthful, including a specific instance in which VICTIM falsely accused the ex-husband of domestic violence. Furthermore, as set forth above, VICTIM declined to testify in the state proceedings against CURTIS LEE ARGANBRIGHT.  Finally, some details of VICTIM's account of the attack are inconsistent with the evidence or have been contradictory.  However, the essential features of VICTIM's statement have remained consistent and are corroborated by the evidence set forth below, statements VICTIM made to medical personnel, a Sexual Assault Nurse Examiner's (SANE) exam with corroborating injuries, photographic evidence of the VICTIM's injuries, DNA evidence, GPS data, and surveillance video.  It is also consistent with corroborating witness interviews.  For example,

I interviewed the VICTIM's mother, whom the VICTIM lived with at the time of the assault. The mother recalled that at approximately 2:00 a.m. on August 24, 2017, she received a phone call from the VICTIM explaining that a police officer (who I know to be ARGANBRIGHT) was going to give her a ride home from the hospital. VICTIM's mother said that it took a long time for the officer to arrive – about 25 minutes – which she found odd, given the short distance between their house and the hospital. When the VICTIM and ARGANBRIGHT arrived, ARGANBRIGHT appeared "standoffish," but told VICTIM's mother to contact him if she needed additional assistance with VICTIM. After ARGANBRIGHT left, the VICTIM sat on the stairs inside the house crying "hysterically." The VICTIM then went to the bathroom, washed her face, and went to bed. The next morning, the VICTIM left the house and went to a local hospital. According to VICTIM's mother, the VICTIM called her from the hospital and said, "Mom, that cop raped me last night." Later, once VICTIM's mother was with the VICTIM, the VICTIM described what had happened the night before in greater detail – specifically, that the officer touched the VICTIM's crotch during a pat down, pulled off the road in a dark area, placed her in handcuffs, vaginally and orally penetrated her, and then ejaculated on her face and in her mouth.

10.     On August 24, 2017 at approximately 10:00 p.m., a nurse performed SANE examination of VICTIM. Prior to conducting the examination, the VICTIM gave a statement to the nurse consistent with the account detailed above. The nurse found tears to VICTIM's posterior fochette, fossa nacularis and labia minora, and has concluded that these injuries are consistent with sexual assault or with someone involved in very aggressive sex. The nurse also observed abrasions on VICTIM's knees and extensive bruising on VICTIM's back. The knee injuries are consistent with VICTIM's account of kneeling in gravel. The nurse subsequently photographed the VICTIM'S injuries to the VICTIM's vaginal area and body. A subsequent forensic examination of swabs taken from VICTIM's body during the SANE were negative for the presence of semen or for CURTIS LEE ARGANBRIGHT's DNA. However, VICTIM cleaned herself when she arrived home and again after waking the following morning.

11.     A set of silver handcuffs — one of the SUBJECT ITEMS — that belonged to CURTIS LEE ARGANBRIGHT was tested for DNA by the Colorado Bureau of Investigation. The test revealed mixtures of three contributors, the major components of which matched the DNA profile of VICTIM. Video footage taken from the hospital shows that ARGANBRIGHT did not place VICTIM in handcuffs at the hospital, so the presence of DNA on those handcuffs is consistent with VICTIM's account of being handcuffed sometime later. ARGANBRIGHT never reported placing VICTIM under arrest. Instead, dispatch calls indicate that at approximately 1:34 a.m. on August 24, 2017, ARGANBRIGHT told dispatch "no charges, change this to a citizens assist."

12.     The Westminster Police Department uses a web-based system to maintain its fleet of patrol vehicles. The system records the GPS coordinates of those vehicles as they conduct patrols and also records other information, such as when the vehicles stop, turn on, and turn off. According to records maintained by this system, the patrol vehicle used by CURTIS LEE ARGANBRIGHT left St. Anthony North Hospital at approximately 1:34 a.m. on August 24, 2017. It then moved along the main road between the hospital and VICTIM's home. But at approximately 1:37 a.m. it moved north of the road, to an area with no street or business addresses, stopped, and had its engine turned off. The engine was turned on again at 1:44 a.m., at which time

the vehicle returned to the main road and travelled to the known residence to VICTIM. At no point during this transport did CURTIS LEE ARGANBRIGHT report a stop to dispatch.

13. VICTIM's cellular telephone was found in the front passenger seat of CURTIS LEE ARGANBRIGHT's patrol vehicle after the end of ARGANBRIGHT's shift on August 24, 2017.

14. CURTIS LEE ARGANBRIGHT arrived at the Westminster Police Department at approximately 5:00 p.m. on August 24, 2017, after a colleague had texted to inform him that he had found a cell phone in the patrol vehicle ARGANBRIGHT had used for his prior shift. ARGANBRIGHT was informed of the allegations against him by a WPD officer and agreed to wait in a conference room. At that point he was interviewed by a BPD officer, who told him that the interview was part of a criminal investigation into the incident. ARGANBRIGHT apologized for "putting us through this," and consented to the search of his police locker, his personal vehicle, and his home. During the interview, ARGANBRIGHT made several statements about the location and status of the clothes he had worn the night before. Initially, he said that he had taken his uniform home and washed it. Then he said that the pants he had worn were in his personal vehicle and the shirt — a short-sleeve uniform shirt— was in his locker, hanging immediately to the right of a shirt that had his badge and pins on it. ARGANBRIGHT stated that his underwear and shirt from the night before had been washed and were on the top of his dryer.

15. CURTIS LEE ARGANBRIGHT's police locker was a mess, with numerous dirty uniform items and underwear strewn about. There was no short-sleeve shirt just to the right of the shirt with the badge and pins on it. Instead, a fresh long-sleeved shirt was hanging there. To the right of that was a used short-sleeve shirt. To the left of the shirt with the badge and pins was what appeared to be a worn short-sleeve shirt. Inside the pocket of the shirt with the badge and pins on it was a notepad with notes regarding St. Anthony's North medical. Each of these items was seized and is one of the SUBJECT ITEMS described in ATTACHMENT B.

16. CURTIS LEE ARGANBRIGHT's car was no cleaner than his locker. It was covered in random property, clothing, packaging and other items. In the back location ARGANBRIGHT had described, officers found a pair of uniform pants. Other random uniform items were strewn throughout the car. Several pairs of used underwear were in the front passenger seat area. Also inside the car was ARGANBRIGHT's duty belt and his duty weapon, a Glock model 17 handgun. Each of these items was seized and is one of the SUBJECT ITEMS described in ATTACHMENT B.

17. Officers went to CURTIS LEE ARGANBRIGHT's home on August 25, 2017. He invited them inside to his home and consented to the collection of the items he had worn during the incident but then washed: an undershirt and underwear. These items, too, are among the SUBJECT ITEMS described in ATTACHMENT B. As the officers were leaving ARGANBRIGHT stated, "I am sorry to put you guys through this."

18. On April 10, 2019, the SUBJECT ITEMS were transferred to the FBI by BPD. They were then placed in an FBI evidence room, where they are maintained in the same condition they were received.

19. I submit there is probable cause to believe that each of the SUBJECT ITEMS may be or is an instrumentality or evidence of the SUBJECT OFFENSE. CURTIS LEE ARGANBRIGHT's confusing statements about which article of clothing he was wearing the night of August 23 – 24, 2017, combined with the disarray of his locker, vehicle and residence, mean that any one of the seized articles of clothing could be what he was wearing, which are relevant to showing his official status as a police officer or his intent to conceal, obfuscate, or create confusion regarding the crime. Furthermore, SUBJECT ITEMS like the duty belt, handcuffs, duty weapon, taser, and baton are additional evidence of ARGANBRIGHT's official status, as well as his physical power over the VICTIM, corroborate the VICTIM's account of the assault, or are bundled together in such a way that release of one would compromise the evidentiary chain of custody. For each of these reasons, I request authority to seize and maintain these items as part of the investigation.

## CONCLUSION

20. Based on the investigation described above, I respectfully submit that there is probable cause to believe that CURTIS LEE ARGANBRIGHT committed the SUBJECT OFFENSE. Based on those same facts, I respectfully submit that there is also probable cause to believe that the SUBJECT PREMISES, more fully described in ATTACHMENT A, presently contains the SUBJECT ITEMS described in ATTACHMENT B, which constitute instrumentalities and evidence of the SUBJECT OFFENSE.

I, Donald Peterson, an FBI Special Agent, being duly sworn according to law, hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

*s/Donald Peterson*
Donald Peterson, Special Agent
Federal Bureau of Investigation

Submitted, attested to, and acknowledged by reliable electronic means on this 28th day of June, 2019.

HON. S. KATO CREWS
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLORADO

**This Application and Affidavit was reviewed and submitted by Assistant United States Attorney Bryan David Fields.**

13